STATE OF CONNECTICUT *v.* RALPH KILLENGER

STATE OF CONNECTICUT *v.* ROBERT ESPOSITO
(9384)
(9386)

HEALEY, PARSKEY, SHEA, GRILLO and DALY, Js.

Argued February 10—decision released April 24, 1984

*Kenneth Rosenthal,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellants (defendant in each case).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

GRILLO, J. This is an appeal from the conviction of two defendants, Robert Esposito and Ralph Killenger, on charges of first degree assault and first degree robbery. In this appeal, the defendants maintain that the trial court erred in failing to limit the state to proving that the instrument causing the victim's injuries was a hammer, as specified in the bill of particulars. They claim, also, that the court erred in failing to charge on the lesser included assault offenses based on reckless or criminally negligent conduct, and that closing arguments should have been recorded.

From the evidence presented at trial, the jury could reasonably have found the following facts: Shortly after midnight on February 2, 1978, the victim was on his way to his sister's home in New Haven. When his 1968 Pontiac stationwagon ran out of gas on Ferry Street near Le Andre's Bar, the victim stood by his car with a red plastic flashlight to alert oncoming traffic. After an older model Chevrolet approached from the direction of Le Andre's, the victim requested a push from the two males in the car who were later identified as the defendants. The Chevrolet, driven by Esposito, then

pushed the stationwagon for a number of blocks, past a series of closed gas stations, finally stopping in the parking lot of John's Arco station.

The victim stopped his vehicle near the pumps of the gas station and got out in order to pay the defendants for their help. An argument ensued regarding the amount of payment for the defendants' assistance. Although the exact sequence of events is uncertain, there was testimony that the victim was "banged" into the stationwagon, then "slammed" into the car window. Killenger repeatedly punched the face of the victim, who struck back with his plastic flashlight. The force of the blows pushed the victim partially inside the rear window opening of the Pontiac. Killenger then released the victim, went back to the Chevrolet, returned with a hammer, and struck the victim on the head. Esposito then pulled the victim's wallet containing about $50 from his rear pants pocket and urged Killenger to hurry. As the defendants drove away in the Chevrolet, a witness observed the victim's legs being dragged from the passenger's side of the car. The witness further observed Killenger get out of the passenger side of the Chevrolet and strike the victim as he lay on the pavement. The defendants then drove away. The victim was eventually transported to Yale-New Haven Hospital, where he spent nine days. X-rays revealed that he sustained a depressed fracture of a skull bone, a broken nose, and a triple fracture of his left cheek bone. The depressed skull fracture measured approximately one inch in diameter and was circular in shape. In the opinion of the two doctors who treated the victim, the skull fracture could only have been inflicted by a hard, blunt, or solid object.

Thereafter, both defendants were charged in substituted informations with assault in the first degree and robbery in the first degree, tried together, and convicted of the offenses. Both offenses contain the ele-

ment that a "dangerous instrument" be used in the commission of the crime.[1] The informations did not specify the type of "dangerous instrument" which was allegedly employed. In a bill of particulars requested by the defendants, however, the state described the dangerous instrument as a hammer. At trial, the plastic flashlight was introduced into evidence. The hammer, however, was not introduced since it was never located.

On appeal, the defendants first argue that the court erred by failing to instruct in accordance with their exception that the jury could convict only if they found that a hammer had been used since the state was limited to proving the specific weapon contained in the bill of particulars. They assert a constitutional entitlement to be informed of the "nature and cause of the accusation" and are required to defend only against the charge alleged. They assert that due process requires that "significant factual elements" be defined before a criminal defendant is forced to trial. According to the defendants, these principles were violated when the jury was instructed that it could consider evidence that the dangerous instrument used in the assault was a flashlight.[2]

---

[1] General Statutes § 53a-59 (a) (1) and (3) provide: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

General Statutes § 53a-134 (a) (3) provides: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[2] The court's charge relative to the defendants' claim reads as follows: "Now, you heard testimony here regarding a hammer, you heard testimony regarding a flashlight, obviously it seems to me that [a] hammer being used

The defendants maintain that a focus of defense counsels' efforts at trial was the state's burden to establish the "dangerous instrument" element of the offenses. They argue that they assumed that the state would be limited by the bill of particulars to proving the use of a hammer. While a lack of particularity would have been a disadvantage to them in preparing their case, they claim to have been disadvantaged to an even greater extent by reliance on particulars later disregarded. Once a bill of particulars has been filed, the defendants argue that the state is limited to proving the offense in the exact manner described,[3] including the use of the particular instrument specified.

The state maintains that it does not matter whether a hammer or a flashlight was used. It contends that it is not necessary to show that the particular instrument named in the pleadings was used, as long as the instrument used was of the same generic character and used in a similar manner as the named instrument. We agree.

This particular issue of specificity in regard to the bill of particulars is one of first impression in this state. We herein adopt the position that "[a]lthough a pleading alleges that a specified instrument was used in committing the offense[s], it is not necessary to prove that the particular instrument or even the exact kind of

in the manner that Mr. Lynn claims it was used would be a dangerous instrument but that's for you to conclude, or form a conclusion on, if you are satisfied that, in fact, there was a hammer being used. And that's part of your job here, of course, to assess that as well as all the other testimony."

Although the court did not explicitly state that a conviction could be based upon a finding that a flashlight rather than a hammer had been used in the assault, the charge was susceptible to that interpretation, as the defendants claimed in their exception.

[3] We note that at no time during the trial did the defendants object to the introduction of evidence relating to the use of a flashlight. Furthermore, they did not request that the trial court charge the jury that if they found the flashlight to be the dangerous instrument employed, then they should acquit the defendants.

instrument was used. The proof need only show that the instrument used was of the same generic character, and that the nature of the violence and the injury received were the same." 3 Wharton's Criminal Procedure (12th Ed.) § 506. This is also the posture adopted by a number of other jurisdictions which have already had occasion to rule on this issue.

In *People* v. *Alexander,* 42 Misc. 2d 927, 930, 249 N.Y.S.2d 275 (1964), the court held that "[i]t makes no difference, therefore, that the evidence did not establish the use of a sawed-off rifle, as alleged in the indictment. It is sufficient that the implement employed was shown to have been a firearm of some description, falling within the general class of weapon alleged in the indictment." In *Trest* v. *State,* 409 So. 2d 906, 909 (Ala. App. 1981), the court held that "[w]here the weapon designated in the indictment and the weapon proved at trial are of the same nature and character, there is no variance. The law does not require precise conformity in every particular where the weapon is alleged, but rather substantial proof of the means by which the offense was committed." In *Bowers* v. *State,* 145 Miss. 832, 111 So. 301 (1927), the court noted that the indictment charged assault and battery with a deadly weapon, "to wit, a wrench," and the proof showed that a stick had been used. The court concluded that there was no material variation of the proof in support of the indictment. In *Ricks* v. *State,* 224 So. 2d 413, 414 (Fla. App. 1969), the court, in a per curiam decision, found no merit in the defendant's claim of a material variance in the information where he was charged with assault with a deadly weapon, a brick, and the proof tended to show the assault was committed with a rock. Finally, in *Davis* v. *State,* 97 Ga. App. 342, 345, 103 S.E.2d 86 (1958), the court held that the "rule is that there is no fatal variance when the weapon alleged is one which causes a certain type

of wound, and the weapon used, as shown by the evidence, is one capable of effecting the same type of wound, although it is not the instrument named in the indictment, since the State is presumed to be in possession of information as to the type of injury inflicted but may not be able to determine exactly what weapon was used to bring about the result.''

In the present case, the bill of particulars specified that the dangerous instrument was a hammer. The injury to the victim, a depressed skull fracture, was not in dispute. Whether that injury was caused by a blow with a hammer or with a flashlight is not determinative.[4] Both instruments used in the fashion testified to by the victim met the definition of dangerous instruments as outlined in the statute,[5] and both, when used to strike a victim, are of the same generic character. Accordingly, we reject the defendants' claim that if the jury found a flashlight was used rather than a hammer, they would have been entitled to acquittal.

Moreover, our decision in this case in no way undercuts, as the defendants suggest, the basic principles of fundamental fairness and fair notice to which all criminal defendants are entitled. The defendants argue that our decision will allow the prosecution to feel ''free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal.'' *Russell* v. *United States,* 369 U.S. 749, 768, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962). Our holding today, however, does not sanction the conviction

---

[4] In view of the evidence as to the way in which the flashlight may have been used, the jury might reasonably have found that ''flashlight'' fell within the definition of ''dangerous instrument.'' See *State* v. *Litman,* 106 Conn. 345, 353, 138 A. 132 (1927) (billiard cue termed a deadly weapon.)

[5] General Statutes § 53a-3 (7) provides: '' 'Dangerous instrument' means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury, and includes a 'vehicle' as that term is defined in this section.''

of a criminal defendant when significant factual elements are left undefined. Where, as here, the weapon designated in the bill of particulars and the one proved at trial are not identical, but rather of the *same nature and character,* this circumstance does not constitute a fatal variance. We continue to adhere to the test recently outlined in *State* v. *Roque,* 190 Conn. 143, 460 A.2d 26 (1983): " '[If] the state's pleadings . . . informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty. . . .' (Citations omitted.) *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979)." *State* v. *Roque,* supra, 154, quoting *State* v. *Ballas,* 180 Conn. 662, 664, 433 A.2d 989 (1980). "Once such a bill of particulars has been filed . . . the state is limited to proving that the defendant has committed the offense in *substantially* the manner described." (Emphasis added.) *State* v. *Ruiz,* 171 Conn. 264, 270, 368 A.2d 222 (1976); *State* v. *Roque,* supra, 155. We conclude that this "substantiality" test is met in this case since either instrument involved had the potential character of a dangerous instrument capable of inflicting the same type of wound.

The defendants' second claimed error involves the trial court's failure to charge the jury on the lesser offenses included in the assault charge. As previously stated, the defendants were charged with first degree assault, which encompasses "intentional" or "extremely indifferent recklessness." At trial, the judge charged the jury that they should consider intentional assault in the second degree and intentional assault in the third

degree as lesser included offenses.[6] The defendants argue that this was insufficient since they were entitled to a charge which included reckless second and third degree assault.[7] Under the circumstances presented to us in this case, we disagree.

The defendants' claim must be measured against the rules for lesser included offenses set out in *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980): "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit

[6] General Statutes § 53a-60 (a) (1) and (2) provide: "ASSAULT IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."
General Statutes § 53a-61 (a) (1) provides: "ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."
[7] General Statutes § 53a-60 (a) (3) provides: "ASSAULT IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of assault in the second degree when: (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument."
General Statutes § 53a-61 (a) (2) and (3) provide: "ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: . . . (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument."

the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id., 588.

We need consider only the first condition in order to dispose of this claim, since the defendants failed to request an appropriate instruction. The defendants claim that their oral and written "requests" prior to the charge fulfill this first requirement. In the written request, the defendants merely asked the court to instruct the jury, in pertinent part, that it could consider the lesser offenses of assault in the second degree and assault in the third degree as lesser included offenses. The defendants did not include any citation of authority for the request or enumerate those facts which they believed supported it. The very short request to charge failed to contain "such a complete statement of the essential facts as would have justified the court in charging in the form requested." *Michaud* v. *Gagne,* 155 Conn. 406, 410, 232 A.2d 326 (1967), quoting *Dwyer* v. *Connecticut Co.,* 103 Conn. 678, 680, 131 A. 838 (1925); see also Practice Book § 852. Nor did they specify any particular subsection or subsections of assault in the second degree or assault in the third degree as being appropriate for the charge. Thereafter, the trial court did charge the jury that it could consider intentional assault in the second and third degrees as lesser included offenses.

Since the record does not contain an appropriate request, the refusal of the court to charge on reckless assault in the second degree and reckless and criminally negligent assault in the third degree was justified. See *State* v. *Johnson,* 188 Conn. 515, 450 A.2d 361 (1982). We find no error in the failure of the court so to charge.

The defendants' final claim that the failure of the court stenographer to record closing arguments was reversible error is similarly without merit. The defend-

ants argue that § 51-61 (a),[8] by not requiring the recording of arguments of counsel, impedes the effective assistance of counsel by making unavailable a transcript of an essential portion of the trial. They argue that new appellate counsel has no way of knowing what errors may have been committed in closing arguments.

The state, on the other hand, maintains that the defendants abandoned their request in favor of the ordinary practice of having a court reporter remain in attendance to record the objections and arguments of the parties. See *State* v. *Vitale,* 190 Conn. 219, 226, 460 A.2d 961 (1983). After a thorough examination of the record, we conclude that the defendants' argument must fail.

There is some indication in the record[9] that the defendants acquiesced in the practice ordinarily followed in the trial courts of this state of which we have recently taken judicial notice. See id. A court reporter remains in attendance during argument, prepared to record any objection or interruption which might occur in the course thereof, but does not record the remarks of counsel unless so directed by the court.

---

[8] General Statutes § 51-61 (a) provides: "COURT REPORTER TO BE SWORN. DUTIES. TRANSCRIPT. (a) Each official court reporter, before entering upon the duties of his office, shall be sworn to faithfully perform them and shall then be an officer of the court. He shall attend the court and make accurate records of all proceedings in the court, except the arguments of counsel and sessions of small claims."

[9] The following colloquy occurred immediately prior to closing arguments between the trial court and counsel for the defendant:

"Mr. Brunswick: Before closing arguments, I would like to move that the closing arguments be transcribed.

"The Court: Well—

"Mr. Brunswick: At least the State. I am not asking that mine be transcribed or Mr. Snyder's.

"The Court: You want the State's arguments?

"Mr. Brunswick: Yes.

"The Court: Well, of course, the problem is if something unfair is said in argument, then how could we have a record of it.

"Mr. Brunswick: The only other way—." (Discussion off the record.)

The record in this case reveals that several objections during the closing arguments were in fact recorded by the stenographer. Absent any clearly denied request by the defendants for the arguments to be recorded or any exception taken to the method employed, the defendants must be deemed to have assented to the procedure employed. The defendants have, thus, waived their right to object to any impropriety. Id.

There is no error.

In this opinion the other judges concurred.