STATE OF CONNECTICUT *v.* GLEN MARTIN
(AC 17514)

Lavery, Schaller and Vertefeuille, Js.

Argued September 20—officially released December 14, 1999

*Michael L. Moscowitz*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Mary Elizabeth Baran*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Glen Martin, appeals from the judgments of conviction, rendered after a jury trial, of disorderly conduct in violation of General Statutes § 53a-182[1] and criminal violation of a protective

---

[1] General Statutes § 53a-182 (a) provides: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly con-

order in violation of General Statutes § 53a-110b (a). The defendant claims that (1) the trial court improperly denied his motion to dismiss for failure to grant him a speedy trial and (2) the evidence presented was not sufficient to support the jury's verdict that he was guilty of disorderly conduct. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. The defendant was charged in three separate files with two counts of threatening in violation of General Statutes § 53a-62 (a) (1) and (2), and one count each of stalking in the first degree in violation of General Statutes § 53a-181c (a) (2), disorderly conduct in violation of § 53a-182 (a) (2) and criminal violation of a protective order in violation of § 53a-110b (a). Those charges were based on actions by the defendant allegedly committed between August and December, 1995. On June 27, 1996, while incarcerated for a prior conviction, the defendant filed a request for a trial or final disposition of the pending charges against him pursuant to General Statutes § 54-82c.[2] On November 26, 1996, 152 days after the defendant's request, he filed a motion to dismiss the charges in

duct, annoys or interferes with another person; or (3) makes unreasonable noise; or (4) without lawful authority, disturbs any lawful assembly or meeting of persons; or (5) obstructs vehicular or pedestrian traffic; or (6) congregates with other persons in a public place and refuses to comply with a reasonable official request or order to disperse."

[2] General Statutes § 54-82c provides in relevant part: "(a) Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. For good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary or reasonable continuance. . . ."

all three files pursuant to General Statutes § 54-82d,[3] arguing that dismissal was warranted under statutory and constitutional mandates.

After a hearing, the trial court denied the defendant's motion to dismiss in a written memorandum of decision, concluding that the unavailability of a jury panel for a period of thirty-nine days constituted an exceptional circumstance for which a continuance was both reasonable and necessary. The trial court further concluded that the defendant's constitutional right to a speedy trial was not so impaired as to warrant the dismissal of the charges against him. On June 3, 1997, the jury returned verdicts of guilty with respect to the charges of disorderly conduct, stalking in the first degree and criminal violation of a protective order and not guilty as to the remaining charges. The defendant subsequently withdrew his appeal from the stalking conviction. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims first that the trial court's denial of his motion to dismiss was improper. In support of this claim, the defendant relies on both his statutory and constitutional rights to a speedy trial. Regarding the former, the defendant claims that the denial was improper because the state neither moved for nor was it granted a continuance in open court for good cause shown as required by § 54-82c (a). We disagree.

"When reviewing the grant of continuances which toll the statutory [120 day] period within which to bring a criminal case to trial, [an appellate] court will find

---

[3] General Statutes § 54-82d provides: "If an action is not assigned for trial within the period of time as provided in section 54-82c, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment or information be of any further force or effect, and the court shall enter an order dismissing the same."

error only if a clear abuse is shown of the trial court's discretion in finding that a continuance is necessary or reasonable." *State* v. *Antrum*, 185 Conn. 118, 123, 440 A.2d 839 (1981). The trial court's memorandum of decision specifically recites its finding that there was no jury panel available for a period of thirty-nine days, that that was an exceptional circumstance, and "that a continuance was both reasonable and necessary." We conclude that the trial court's granting a continuance for the reason stated was reasonable and that the trial court did not clearly abuse its discretion in so concluding.[4]

The state's failure to move for a continuance is of no help to the defendant. In *State* v. *King*, 40 Conn. App. 757, 761, 673 A.2d 124, cert. denied, 237 Conn. 918, 676 A.2d 1374 (1996), we held that the lack of a request for a continuance does not render either the trial court's granting of a continuance, or the subsequent application thereof, improper. Similarly, in the present case, the state did not move for a continuance during the 120 day period, but the trial court later ruled that a continuance was reasonable. Under the rationale of *King*, the continuance was proper. Accordingly, the defendant's statutory claim fails.

The defendant also asserts that the trial court's denial of his motion to dismiss violated his right to a speedy trial under both the federal and state constitutions.[5] We are not persuaded.

"The Supreme Court of the United States and [the Connecticut Supreme Court] have identified four factors which form the matrix of the defendant's constitutional right to speedy adjudication: '[l]ength of delay,

---

[4] Because § 54-82c allows for either "necessary" or "reasonable" continuances, we need not determine whether the continuance was "necessary."

[5] Although the defendant cites to both the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution, he offers no adequate and independent analysis of his state constitutional claim. We therefore consider only his federal constitutional claim. See, e.g., *State* v. *Dyson*, 238 Conn. 784, 794, 680 A.2d 1306 (1996).

the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' *Barker* v. *Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Lloyd*, 185 Conn. 199, 208, 440 A.2d 867 (1981); *State* v. *Nims*, 180 Conn. 589, 591, 430 A.2d 1306 (1980). A balancing test is to be applied on a case by case basis. None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated. *State* v. *Nims*, supra, 591–92." *State* v. *Johnson*, 190 Conn. 541, 544–45, 461 A.2d 981 (1983).

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* v. *Wingo*, supra, 407 U.S. 530; see also *Pelletier* v. *Warden*, 32 Conn. App. 38, 47, 627 A.2d 1363, cert. denied, 227 Conn. 920, 632 A.2d 694 (1993). The defendant argues that because he was a sentenced prisoner whose 120 day period had run, he suffered prejudice, which requires us to analyze the remaining *Barker* factors. He does not, however, give any basis for his conclusion.

Our courts have not held that any particular length of delay is presumptively prejudicial, but have stated that an extensive delay warrants an inquiry into the other factors of *Barker*. See, e.g., *State* v. *Gasparro*, 194 Conn. 96, 100, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985) (three and one-half years); *State* v. *Davis*, 192 Conn. 739, 740–41, 474 A.2d 776 (1984) (twenty-six months); *State* v. *Cleary*, 3 Conn. App. 349, 350–51, 488 A.2d 831 (1985) (thirty-eight months). There is "no constitutional basis for holding that the speedy trial right can be quantified into a specific number of days or months." *Barker* v. *Wingo*, supra, 407 U.S. 523. Although no exact length of time has been established to be sufficient to presume prejudice, a delay of over two years is sufficient to

cause investigation into the other factors of *Barker*. *State* v. *Almgren*, 12 Conn. App. 364, 369, 530 A.2d 1089 (1987).

In the present case, the delay was significantly less than two years, the defendant was incarcerated for a prior conviction, the defendant has given no basis for his claim of prejudice to his defense, and the delay was not a purposeful action by the state, but was due to the unavailability of a jury panel. Even if the relatively short duration of delay present in this case is the catalyst for further inquiry, that inquiry, which includes the weighing of the other *Barker* factors, as well as the fact that the continuance granted was reasonable, leads us to conclude that the defendant was not denied his constitutional right to a speedy trial.

## II

The defendant claims next that there is insufficient evidence in the record to support the jury's verdict that he is guilty of disorderly conduct. In support of this claim, the defendant advances two arguments: (1) the only way the jury could have convicted him on the basis of the evidence presented was to resort to speculation and conjecture; and (2) the evidence is insufficient in light of the specificity of the charging document. We disagree.

Because this claim is unpreserved, the defendant has asked that it be reviewed under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] We review the

---

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

defendant's claim since unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof. *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993); *State* v. *Laws*, 37 Conn. App. 276, 281, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995).

"In reviewing [a] sufficiency [of the evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . Moreover, [t]his court will construe the evidence in the light most favorable to sustaining the trial court's [judgment] and will affirm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical inferences drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996). "We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . [An appellate] court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 258, 681 A.2d 922 (1996). Moreover, "[i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is

to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State v. Sivri*, 231 Conn. 115, 132–33, 646 A.2d 169 (1994).

In addressing the defendant's first argument, we note that under § 53a-182 (a) (2), the state was required to prove, beyond a reasonable doubt, that the defendant (1) acted with the intent to cause inconvenience, annoyance or alarm and (2) by offensive or disorderly conduct, annoyed or interfered with the victim. On the basis of the testimony of the victim, Dawn Olsen, and Officer Joseph Ferreira of the Wallingford police department, the jury reasonably could have found that the defendant and Olsen had lived together for approximately four years and were romantically involved. When the relationship ended, Olsen moved to 174 Quinnipiac Street in Wallingford. On August 12, 1995, the defendant entered Olsen's house without knocking, telling her that he was going to take a shower. Olsen told the defendant that she wanted him to leave. He called Olsen names and blamed his problems on her. The defendant slammed his hand down on the table, yelled at her, grabbed her and pushed her. The defendant then took a shower and, while he was doing so, Olsen retrieved a microcassette tape recorder that she had borrowed from the Wallingford police. During the conversation that ensued after the defendant's shower, Olsen agreed to meet the defendant at a nearby park.

When Olsen met the defendant in the park, another argument took place. Olsen attempted to leave and the defendant grabbed her arm. Olsen got away from the defendant and called the police, and, as a result of the defendant's conduct, a protective order was issued. Still, the defendant came to Olsen's apartment on occasion. On September 20, 1995, the defendant went to Olsen's window and argued with her. The defendant would also drive by Olsen's apartment early in the morn-

ing and honk his horn. On September 22, 1995, her electricity and cable television service were shut off. In addition, on October 19, the water in her apartment was shut off. The police were called and the defendant was arrested. Another protective order was issued.

In a recorded conversation on August 12, 1995, the defendant said to Olsen that "you took my life away from me and you deserve to die. I don't want to do that Dawn. I don't want to hurt you. I want to work things out, stop being such a rotten bitch to me."

Viewing the testimony in the light most favorable to sustaining the verdict, we conclude that the facts and reasonable inferences drawn therefrom sufficiently support a finding of guilt of disorderly conduct beyond a reasonable doubt and that the jury did not need to resort to speculation and conjecture in reaching its verdict. There is ample testimony in the record to allow a jury to conclude that the defendant intended to inconvenience, annoy or alarm Olsen and that the defendant did, in fact, do so.

The defendant also asserts that the evidence was insufficient in light of the specificity of the charging document. The charging document states in relevant part: "And the Attorney . . . accuses [the defendant] of disorderly conduct and charges that at the Town of Wallingford in the vicinity of 174 Quinnipiac Street on or about the 12th day of August, 1995, the said [defendant], with the intent to cause inconvenience, annoyance or alarm by offensive or disorderly conduct, did annoy or interfere with another person, to wit: Dawn Olsen in violation of Section 53a-182 (a) (2) of the Connecticut General Statutes." The crux of the defendant's argument is that because the information states Olsen's address, the jury could consider only the evidence relating to the events that occurred there and that such

evidence is insufficient to support his conviction. His argument is without merit.

"There is no question that the state is limited to proving that the defendant has committed the offense in substantially the manner described in the information. . . . The inclusion in the state's pleading of additional details . . . does not make [those additional details] essential elements of the crime . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Evans*, 44 Conn. App. 307, 313, 689 A.2d 494, cert. denied, 240 Conn. 924, 692 A.2d 819 (1997). That rule of law, combined with our conclusion that the evidence supports the finding that the elements of the crime charged were proved beyond a reasonable doubt, defeats the defendant's argument. Even if we were to limit the evidence as the defendant requests, sufficient evidence still exists to support the jury's verdict. The alleged constitutional violation does not clearly exist and did not clearly deprive the defendant of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 239–40. Accordingly, the defendant's insufficient evidence claim fails.

The judgments are affirmed.

In this opinion the other judges concurred.