# STATE OF CONNECTICUT *v.* ANDRE ATKINS
## (AC 29305)

Beach, Alvord and West, Js.

Argued September 16—officially released December 22, 2009

*Heather M. Wood,* deputy assistant public defender, for the appellant (defendant).

*Michele C. Lukban,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Catherine Brannelly Austin,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Andre Atkins, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of attempt to commit sexual assault in the first degree

in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (2), one count of sexual assault in the fourth degree in violation of General Statutes (Rev. to 2001) § 53a-73a (a) (1) (A), one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] The defendant claims that the court (1) improperly denied his motion for a judgment of acquittal, which was based on his challenge to the sufficiency of the evidence to support his conviction on the count of sexual assault in the fourth degree, (2) abused its discretion when it admitted uncharged misconduct evidence without first weighing the probative value of such evidence against its prejudicial impact, (3) improperly failed to provide, sua sponte, a limiting instruction to the jury regarding the proper use of the uncharged misconduct evidence admitted at trial and (4) abused its discretion in denying his motion for a mistrial.[2] We agree with the defendant as to his first

[1] The conduct that gave rise to the risk of injury charge allegedly occurred between 2001 and 2005. Although § 53-21 has been amended since then, there is no dispute that the conduct in which the defendant allegedly engaged was prohibited under all of the applicable revisions. In the interest of simplicity, we refer to the current revision of § 53-21.

[2] The defendant also claims that he was deprived of his federal and state constitutional rights to notice that he could be convicted of sexual assault in the fourth degree on the basis of uncharged misconduct evidence. Because we reverse the judgment of conviction as to sexual assault in the fourth degree for lack of sufficient evidence, we need not address this claim discretely. As will be discussed in part I of this opinion, the concept of notice is relevant to the defendant's sufficiency claim. We need not, however, address notice as a constitutional issue.

Within this claim, the defendant also seems to argue that the lack of notice undermined the sufficiency of the evidence with regard to the two counts of risk of injury. The defendant argues that "[a]lthough the state presented evidence of conduct that occurred in 2005 in Waterbury, which, if believed by the jury, would be sufficient for conviction . . . [t]here is simply no way of ascertaining whether the jury, in finding the defendant guilty of risk of injury, was considering the evidence of conduct alleged to have occurred in 2005 in Waterbury or the evidence of conduct alleged to have occurred prior to 2001 in Bridgeport, conduct not charged in the information and of which the defendant never received notice that he could be convicted on."

claim but disagree with the defendant as to his remaining claims. Accordingly, we reverse in part and affirm in part the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant. The female victim, C,[3] was born in December, 1992, and the defendant in 1983. C lived with her mother, brother and two sisters. C and her brother have the same father and visited him approximately every other weekend, first in Bridgeport and later in Waterbury. When C was six or seven years old, her father lived in Bridgeport with other family members, including the defendant, who is the nephew of C's stepmother. The father and his family, including the defendant, later moved to Waterbury. On one occasion in 2005, when C was visiting her father in Waterbury, she took a shower and the defendant "busted in the shower" and turned her around "so he could see everything." When visiting her

---

The defendant cannot prevail on this claim because "[i]n reviewing [a] sufficiency [of the evidence] claim . . . we construe the evidence in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) *State* v. *Martin*, 56 Conn. App. 98, 105, 741 A.2d 337 (1999), cert. denied, 252 Conn. 926, 746 A.2d 790 (2000). As the defendant admits in his brief, the state presented sufficient evidence, aside from any uncharged misconduct evidence, on which his conviction of risk of injury to a child could have been based. On the basis of the evidence of sexual contact in Waterbury, the jury reasonably could have found that the defendant committed an "act likely to impair the health or morals of any such child" under § 53-21 (a) (1) and that he had "contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child," under § 53-21 (a) (2). That the court admitted evidence of uncharged misconduct which might have also supported a conviction under these statutory subsections does not undermine the sufficiency of the evidence with respect to the risk of injury counts. The defendant's claim that there is no way of ascertaining whether the jury based the defendant's conviction on uncharged misconduct evidence is really a claim of instructional error, which is addressed in part III of this opinion.

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

father in Waterbury, C stayed in her sister's bedroom and shared a queen-size bed with her sister. The defendant slept on the bedroom floor. While C was visiting her father in Waterbury at unspecified dates in 2005, when C was twelve years old, the defendant twice had sexual intercourse with C and attempted on a third occasion to do so.

The defendant thereafter was arrested and charged by way of substitute long form information with two counts of sexual assault in the first degree, attempt to commit sexual assault in the first degree, sexual assault in the fourth degree and two counts of risk of injury to a child. In count four of its substitute long form information, the state alleged that the defendant committed sexual assault in the fourth degree "on diverse days in 2001 through 2005 at or near [the father's home in] Waterbury . . . ." Prior to trial, the state filed a notice of the uncharged misconduct that it intended to offer at trial. Included in that notice was potential testimony from C and her brother that the defendant touched C's intimate body parts at the Bridgeport home of the victim's father when C was six or seven years old.

At trial, C testified on direct examination that when she would visit her father in Bridgeport, she did not have a good relationship with the defendant because of "the things he did." The state then asked C "what things did [the defendant] do to you in Bridgeport?" The defendant objected to that question on the ground that the answer would elicit evidence of uncharged misconduct. The court overruled the objection on the ground that the uncharged misconduct tended to prove a common plan or scheme. C then testified that the defendant had groped her breasts and buttocks when she visited her father in Bridgeport prior to 2001.[4] The

[4] C testified that the groping occurred at her father's home in Bridgeport when she was "six or seven" years old. C was born in December, 1992, and, accordingly, would have been six or seven years old in December, 1998, through December, 2000.

court did not give a limiting instruction with respect to the uncharged misconduct evidence.

Following a jury trial, the defendant was convicted on all counts and sentenced to a total effective term of fourteen years incarceration and twenty-six years special parole. This appeal followed.

I

The defendant claims that the court improperly denied his motion for a judgment of acquittal because the state adduced insufficient evidence to support his conviction of sexual assault in the fourth degree. The defendant argues that the only evidence that could have supported his conviction was admitted as uncharged misconduct evidence, which evidence was not properly admitted as conduct constituting the basis for his conviction of sexual assault in the fourth degree. We agree.

General Statutes (Rev. to 2001) § 53a-73a (a) provides in relevant part that "[a] person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ." The term "sexual contact" for the purposes of § 53a-73a is defined in relevant part as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person . . . ." General Statutes § 53a-65 (3). "A claim of insufficient evidence implicates the constitutional right not to be convicted on inadequate proof. . . . We review this claim first as it may be dispositive of the appeal . . . because a defendant convicted on insufficient evidence cannot be retried without violating the double jeopardy clause." (Citation omitted; internal quotation marks omitted.) *State* v. *Rose*, 112 Conn. App. 324, 328, 963 A.2d 68, cert. granted on other grounds, 290 Conn. 920, 966 A.2d 238 (2009).

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Fleming,* 111 Conn. App. 337, 342, 958 A.2d 1271 (2008), cert. denied, 290 Conn. 903, 962 A.2d 794 (2009).

The only evidence presented by the state at trial pertaining to the charge of sexual assault in the fourth degree consisted of the "groping" incidents that occurred in Bridgeport prior to 2001.[5] The defendant

[5] The state argues, alternatively, that C's testimony that the defendant groped her breasts and buttocks "[a]ny time" she would visit her father was sufficient to support the defendant's conviction of sexual assault in the fourth degree. Because the testimony does not specify time or location, the state argues, the groping incidents could have occurred at the time and place alleged in the information. C's testimony regarding the groping was as follows:

"[The Prosecutor]: [C], what would [the defendant] do to you when you were . . . visiting in Bridgeport with your father?

"[The Witness]: Feel my breasts and butt.

\* \* \*

"[The Prosecutor]: How old were you when he would do this to you?

"[The Witness]: Six or seven.

\* \* \*

"[The Prosecutor]: How often would [the defendant] do this to you?

"[The Witness]: Any time I visit my father.

"[The Prosecutor]: Was it at the apartment in Bridgeport?

"[The Witness]: Yes."

The jury could not reasonably have inferred from this testimony that the defendant groped C's breasts and buttocks when she visited her father in Waterbury. C clarified that the incidents occurred in Bridgeport. At that time, she was six or seven years old. This conduct, then, was not charged in the state's substitute long form information but was included in its notice of uncharged misconduct. The testimony specifically was admitted as uncharged misconduct evidence and is well outside the period of time alleged in the information.

Also, C's brother testified that the defendant "got on top of—whatever, started rubbing on her, I told him to get up, then I hit him." The defendant

objected to the admission of the evidence on the ground that it was uncharged misconduct. The state did not respond that the evidence was sought to be admitted as evidence of the conduct element of any charged offense but, rather, responded that the evidence was consistent with its notice of uncharged misconduct.[6] In count four of its substitute long form information, the state did not charge the defendant with sexual assault in the fourth degree occurring in Bridgeport prior to 2001. Instead, the state more specifically charged the defendant with sexual assault in the fourth degree occurring on diverse days in 2001 through 2005 in Waterbury. The evidence of the Bridgeport groping incidents was admitted as uncharged misconduct for the purpose of showing a common plan or scheme. At the time the uncharged misconduct evidence was admitted, there was no claim that it was admitted to prove the substantive basis for the actus reus element of the crime charged in the fourth count. "As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused." (Internal quotation marks omitted.) *State* v. *Aaron L.*, 272 Conn. 798, 820, 865 A.2d 1135

objected on the ground that the testimony was outside the state's notice of uncharged misconduct because the testimony could be interpreted as pertaining to persons other than C. The court struck the testimony and permitted the state to question C's brother only regarding acts of misconduct committed as to C in order to remain consistent with the state's notice of uncharged misconduct. C's brother then testified that one time in Bridgeport he saw the defendant groping C's "chest area," and when the defendant failed to stop, he hit the defendant. This corroborative evidence was also included in the state's notice of uncharged misconduct. Prior to the admission of the evidence, the court asked the state, "this is not additional misconduct, this is corroborative of misconduct that's already been adduced, is that correct?" The state answered affirmatively. Accordingly, it was admitted as uncharged misconduct. Both C's testimony regarding the Bridgeport groping incidents and her brother's corroborative testimony were admitted only as uncharged misconduct evidence and, without more, could not be used as evidence of the conduct for the defendant's conviction.

[6] The trial strategy involved in responding to charged conduct may be entirely different from a response to uncharged misconduct.

(2005). "Evidence of uncharged misconduct, although inadmissible to prove a defendant's bad character or propensity to engage in criminal behavior, is admissible [t]o prove the existence of a larger plan, scheme, or conspiracy, of which the crime on trial is a part." (Internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 342, 933 A.2d 1158 (2007).[7]

The uncharged misconduct evidence of the Bridgeport groping incidents was the only evidence elicited at trial pertaining to the charge of sexual assault in the fourth degree. Unless the function for which the evidence was admitted was later altered, there was insufficient evidence to support the defendant's conviction of sexual assault in the fourth degree.

The function of the evidence, however, was not effectively changed. The state suggests that the defendant had notice that the state intended to introduce the Bridgeport groping incidents as evidence by virtue of the state's notice of uncharged misconduct and that the defendant agreed with the court that the fourth count was based on the Bridgeport groping incidents. The state argues that according to Practice Book § 36-18, the defendant consented to the state's amending the substitute information such that evidence of the Bridgeport groping incidents would be substantively charged.[8] The state contends that the defendant therefore had actual notice that he could be convicted on the basis of his conduct in Bridgeport and that he consented to the use of that evidence to prove the actus reus of sexual assault in the fourth degree.

---

[7] Although uncharged misconduct is, of course, technically relevant to some element of a charged crime in order to be admissible, the relevant issue, for purposes of this case, is whether the uncharged misconduct evidence was improperly used for the substantive purpose of proving the acts on which the defendant's conviction of sexual assault in the fourth degree was based.

[8] Most of the state's argument in this regard appears in its response to the defendant's claim of lack of notice. We deem it pertinent to the sufficiency claim as well.

The following colloquy occurred between defense counsel and the court at the charge conference after the defendant's motion for a judgment of acquittal had been denied.

"The Court: And I assume that the fourth count pertains to [C's] claim that the defendant would feel her breasts and butt and squeeze, and should I not say that in my charge on the fourth count, to limit it to that?

"[Defense Counsel]: I do believe . . . those are the incidents that count refers to. But I think because it's a separate charge, because it's a completely different statute, that if there's less confusion—

"The Court: You rather I not mention it?

"[Defense Counsel]: I would rather not.

"The Court: Fine. I won't."

Practice Book § 36-18 provides: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

Contrary to the state's contention, the defendant did not expressly consent to the state amending its information to include the Bridgeport groping incidents. The court stated that it "assume[d]" that the fourth count pertained to the Bridgeport groping incidents. The Bridgeport groping evidence, of course, had been introduced at trial as uncharged misconduct evidence. There was no discussion on the record as to whether the purpose for which the Bridgeport groping evidence had been admitted had been changed, and the state made

no effort to amend the information. Defense counsel's response that he "believed" that the Bridgeport groping incidents pertained to the fourth count, was, at least on the surface, an agreement that the Bridgeport groping evidence could fit organizationally into the fourth count but fell short of express consent to such an amendment to the state's information. Compare *State* v. *Dukes*, 29 Conn. App. 409, 420, 616 A.2d 800 (1992) (defense counsel's unsolicited comment of "okay," made in response to court's statement that it anticipated state to file substituted information, constituted express consent), cert. denied, 224 Conn. 928, 619 A.2d 851 (1993). The state did not seek to amend the information to include the Bridgeport groping incidents, and the court never ruled that the state could amend its information as such.[9] Accordingly, the Bridgeport groping incidents remained uncharged misconduct on which the defendant's conviction of sexual assault in the fourth degree could not be based.[10]

The state also argues that the variance between its information and its proof was permissible because the state's inclusion in the long form information of the additional details of time and location regarding the offense, namely, that the crime occurred in Waterbury in 2001 through 2005, were not elements of the crime of sexual assault in the fourth degree. Accordingly, the state argues, the defendant's conviction may stand because the elements of the crime were satisfied by the evidence of uncharged misconduct and no amendment of the information was necessary.

"[G]enerally speaking, the state is limited to proving that the defendant has committed the offense in substantially the manner described in the information. . . .

---

[9] There was no discussion regarding prejudice to the defendant. See Practice Book § 36-18.

[10] Had the state requested to amend the information and if a clear record therefore existed, the situation might be different.

Despite this general principle, however, both this court and our Supreme Court have made clear that [t]he inclusion in the state's pleading of additional details concerning the offense does not make such allegations essential elements of the crime, upon which the jury must be instructed. . . . Our case law makes clear that the requirement that the state be limited to proving an offense in substantially the manner described in the information is meant to assure that the defendant is provided with sufficient notice of the crimes against which he must defend. As long as this notice requirement is satisfied, however, the inclusion of additional details in the charge does not place on the state the obligation to prove more than the essential elements of the crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Sam*, 98 Conn. App. 13, 38, 907 A.2d 99, cert. denied, 280 Conn. 944, 912 A.2d 478 (2006).[11]

The state's argument is unavailing. The state was not required to prove more than the essential elements of the crime. Rather, it was required to prove the crime with evidence admitted for the substantive purpose of

---

[11] We agree with the state that it is well established that "it is not essential in a criminal prosecution that the crime be proved to have been committed on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the statute of limitations." (Internal quotation marks omitted.) *State* v. *Morrill*, 197 Conn. 507, 552, 498 A.2d 76 (1985). Additionally, a variance between the state's information and its proof as to location is not fatal in many circumstances. See id. (under facts of case, "the fact that the place of death is unknown or that there may be a variance in the proof thereof will not be fatal unless it is made to affirmatively appear that the accused was [misled] or prejudiced thereby" [internal quotation marks omitted]); see also *State* v. *Martin*, 56 Conn. App. 98, 108, 741 A.2d 337 (1999), cert. denied, 252 Conn. 926, 746 A.2d 790 (2000). These principles are not applicable in the present case because the evidence adduced at trial that the state argues supports the defendant's conviction is not simply evidence that varies from the state's information, but, rather, it is evidence, which, in the circumstances, is inadmissible to prove the defendant's guilt.

providing the basis of the actus reus element of the charged crime.

The court improperly denied the defendant's motion for a judgment of acquittal.

## II

The defendant next claims that the court abused its discretion when it admitted uncharged misconduct evidence without first weighing the probative value of such evidence against its prejudical impact. We disagree.

The following facts are relevant to our resolution of this issue. When the state asked C on direct examination what things the defendant did to her in Bridgeport, the defendant objected on the ground that such testimony would constitute uncharged misconduct. The state responded that it had filed a notice of uncharged misconduct and that the evidence was admissible to show a common scheme or plan. The court overruled the defendant's objection. The court reasoned that "[m]y understanding of the evidence is that it would be probative more so than prejudicial. . . . [B]ased on *State* v. *Michael A.*, 99 Conn. App. 251, 913 A.2d 1081 (2007), and *State* v. *John G.*, 100 Conn. App. 354, 362–64, 918 A.2d 986, cert. denied, 283 Conn. 902, 926 A.2d 670 (2007) . . . I'll overrule the objection."

"[A]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . Evidence of prior misconduct may be admitted, however, when the evidence is offered for a purpose other than to prove the defendant's bad character or criminal tendencies. . . . Exceptions to the general rule precluding the use of prior misconduct evidence have been recognized in cases in which the evidence is offered

to prove, among other things, intent, identity, motive, malice or a common plan or scheme. . . . In order to determine whether such evidence is admissible, we use a two part test. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of [the prior misconduct] evidence must outweigh [its] prejudicial effect . . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *John G.*, supra, 100 Conn. App. 362. "[W]e do not . . . requir[e] a trial court to use some talismanic phraseology in order to satisfy this balancing process. Rather . . . in order for this test to be satisfied, a reviewing court must be able to infer from the entire record that the trial court *considered* the prejudicial effect of the evidence against its probative nature before making a ruling." (Emphasis in original; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 395, 844 A.2d 810 (2004).

Our review of the record reveals that the court properly considered both the prejudicial effect of the evidence and its probative nature before making a ruling. After hearing arguments from both counsel, the court articulated that the probative value of the evidence outweighed its prejudicial effect. The court specified that it was relying on *State* v. *Michael A.*, supra, 99 Conn. App. 251, and *State* v. *John G.*, supra, 100 Conn. App. 354. Both cases pertain to the admission of prior misconduct evidence in a sexual assault case. See *State* v. *John G.*, supra, 362–64 (evidence of prior sexual misconduct more probative than prejudicial).; *State* v. *Michael A.*, supra, 267–71 (admission of prior nonsexual

misconduct in sexual assault case improper, but harmless error). We conclude that it applied the requisite balancing test and did not abuse its discretion.

### III

The defendant next claims that the court failed, sua sponte, to provide the jury with a limiting instruction as to the proper use of the uncharged misconduct evidence, and, as a result, the jury was misled by the court's instructions. Without the limiting instruction, the defendant argues, the jury was permitted to infer that he was prone to commit the crimes with which he was charged because he had engaged in similar conduct previously. We decline to review this claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[12] and conclude that the defendant cannot succeed under the plain error doctrine. See Practice Book § 60-5.

Because the defendant did not file a written request to charge or take an exception to the court's instructions, his claim is unpreserved. See *State* v. *Fabricatore*, 281 Conn. 469, 473 n.6, 915 A.2d 872 (2007) (party may preserve for appeal claim of instructional error by submitting written request to charge or by taking exception to charge). The defendant seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 233, and the plain error doctrine. See Practice Book § 60-5.

"[T]he failure of the trial court to give a limiting instruction concerning the use of evidence of prior misconduct is not a matter of constitutional magnitude."

---

[12] *Golding* provides: "[W]e hold that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

(Internal quotation marks omitted.) *State* v. *Ortiz*, 40 Conn. App. 374, 381, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996). Absent a claim of constitutional magnitude, the defendant's unpreserved claim fails to satisfy the second prong of *Golding* and is, therefore, not reviewable.

We also decline to find that this claim constitutes plain error. "As we often have stated, [p]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Dews*, 87 Conn. App. 63, 69, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

Reviewing the record, we perceive no impropriety that would result in manifest injustice. The defendant did not file a written request to charge. The defendant has not provided any authority for the proposition that the court must give a limiting instruction, sua sponte, under the circumstances of this case. "It is well established in Connecticut . . . that the trial court generally is not obligated, sua sponte, to give a limiting instruction." (Internal quotation marks omitted.) Id., 70.; see *State* v. *Cator*, 256 Conn. 785, 801, 781 A.2d 285 (2001) ("trial court generally is not obligated, sua sponte, to give a limiting instruction"); see also Conn. Code Evid. § 1-4 ("court may, and upon request shall, restrict the evidence to its proper scope").[13] The failure by the court to give, sua sponte, an instruction that the defendant

[13] We note, however, that "it is the better practice for the trial court to instruct the jury whenever evidence is admitted for a limited purpose even when not requested to do so . . . ." (Citation omitted.) *Rokus* v. *Bridgeport*, 191 Conn. 62, 67, 463 A.2d 252 (1983).

did not request, that is not of constitutional dimension and that is not specifically mandated by statute or rule of practice is not so egregious that it affects fundamental fairness or the integrity of and public confidence in the judicial proceedings. See *State* v. *Eason*, 47 Conn. App. 117, 120, 703 A.2d 130 (1997), cert. denied, 243 Conn. 962, 705 A.2d 552 (1998).

IV

The defendant last claims that the court abused its discretion in denying his motion for a mistrial. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. C was the first witness called by the state to testify. Almost immediately after C began testifying, she vomited.[14] The court then excused the jury. Outside the presence of the jury, the defendant moved for a mistrial on the ground that the events that transpired created substantial prejudice to the defendant's case. The court denied the defendant's motion and reasoned that it saw no grounds for a mistrial because a complaining witness had vomited.

---

[14] The colloquy following ensued:

"[The Prosecutor]: Do you want some water?

"[The Witness]: Uh-huh.

"[The Prosecutor]: Excuse me, Your Honor.

"The Court: If you could try to slow down. I know this is an unusual environment for you. If you could try to speak very distinctly right into the microphone.

"[The Prosecutor]: Are you okay? Who does your father live with in North Carolina?

"[The Witness]: His wife . . . and other two children.

"[The Prosecutor]: Your Honor, a recess please.

"The Court: We're going to take a brief recess. As soon as we're able to resume, we'll do so. Do not discuss the case.

(Jury retired to the jury room.)

"[The Prosecutor]: Your Honor, may we have a recess?

"The Court: I want to put on the record the obvious, which is that the witness did vomit into a trash disposal bag here and is being tended to by an inspector from the prosecutor's office. Please let me know when we're ready to go. Don't rush it, please. All right. We'll stand in recess. Don't go far."

"In [its] review of the denial of a motion for mistrial, [our Supreme Court has] recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 435, 773 A.2d 287 (2001).

The defendant argues in his brief that the act of vomiting on the witness stand could mean any number of things, such as that C had the stomach flu, and may not have anything to do with a person's state of mind, their credibility, or even the presence of trauma. The defendant argued, however, that it is likely that the jury interpreted C's illness as an indication of her truthfulness, thereby prejudicing the defendant.

As the defendant pointed out in his brief, vomiting on the witness stand is an inherently ambiguous act. In light of this inherent ambiguity, it cannot be assumed that C's having become ill on the witness stand was prejudical to the defendant. The defendant asserts in his brief that the court should have taken steps to ascertain what effect, if any, the victim's vomiting had on the jury. The defendant did not request that the court make a general inquiry. Because the act of vomiting is ambiguous, the defendant has not established that the court abused its discretion in denying his motion for a mistrial.

The judgment is reversed only as to the conviction of sexual assault in the fourth degree and the case is remanded with direction to render judgment of not guilty as to that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.